**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ROBERT SAURO,

                          Plaintiff,

                                                              **REPORT AND**
                                                              **RECOMMENDATION**

                 -against-
                                                              CV 18-2091 (SJF) (AKT)


COSTCO WHOLESALE CORPORATION,

                          Defendant.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Robert Sauro ("Plaintiff") commenced the instant negligence action in New

York State Supreme Court alleging that he tripped and fell in the premises of Defendant Costco

Wholesale Corporation ("Defendant" or "Costco") in Nassau County, New York.  *See generally*

Plaintiff's Complaint ("Compl.") [DE 1-1].  The case was subsequently removed to this Court.

*See generally* Notice of Removal [DE 1].   Between May and October 2018, the parties

conducted and completed fact discovery.  *See* DE 10-16.  Defendant has now moved for

summary judgment, *see* Defendant's Rule 56.1(a) Statement of Undisputed Material Fact

("Def.'s SOMF") [DE 26-11]; Defendant's Memorandum in Support of its Motion for Summary

Judgment ("Def.'s Mem.") [DE 26-12], Def.'s Memorandum in Reply ("Def.'s Reply")

[DE 28-1], which Plaintiff opposes.  *See* Pl.'s Affirmation in Opposition ("Pl.'s Opp'n.")

[DE 27].  Judge Feuerstein has referred Defendant's motion for summary judgment to this Court

for a Report and Recommendation as to whether the motion should be granted.  *See* January 28,

2019 Electronic Order.  For the reasons set forth below, this Court respectfully recommends to Judge Feuerstein that the Defendant's motion for summary judgment be GRANTED.

## II.    BACKGROUND

### A.    Preliminary Issues:  Deficiencies in Plaintiff's Opposition Papers

At the outset, the Court points out several significant issues with both the form and substance of Plaintiff's papers filed in opposition to Defendant's motion.  Normally, the Court would reference the undisputed facts as stated in the parties' Local Civil Rule 56.1(a) Statement of Undisputed Facts and Rule 56.1(b) Response and Counterstatement of Additional Disputed Facts.  However, Plaintiff has failed to comply with Local Civil Rule 56.1.  In its totality, Local Civil Rule 56.1 states as follows:

> (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

> (b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

> (c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

> (d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

Local Civil Rule 56.1(a) – (d).

Instead of filing "correspondingly numbered paragraph[s] responding to each numbered paragraph in the [Rule 56.1(a)] statement of the moving party" pursuant to Rule 56.1(b) – which might have included "additional paragraphs containing a separate, short and concise statement of additional material facts to which it is contended that there exists a genuine issue to be tried" – Plaintiff has filed an "Affirmation in Opposition" to Defendant's motion. *See generally* Pl.'s Opp'n. Plaintiff's Affirmation in Opposition contains a section titled "COUNTER-STATEMENT OF FACTS," which, although presented in numbered paragraphs, does not correspond to the numbered paragraphs in Defendant's Rule 56.1(a) Statement of Undisputed Fact. *See id*. Rather, the "Counter-Statement of Facts" filed by Plaintiff's counsel appears to be a reiteration of Plaintiff's version of events as stated in his deposition testimony and the deposition testimony of a representative of Defendant, without any attempt to respond to the purportedly undisputed material facts asserted by the Defendant. *See id.*

In addition to running afoul of Local Civil Rule 56.1, Plaintiff's "Affirmation in Opposition" also violates Local Civil Rule 7.1, which governs the format and composition of papers filed in connection with motions on notice. That rule provides as follows:

> (a) Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers:
>
>> (1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
>>
>> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and

> > (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.
> >
> > (b) Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2) and (3) above, and an opposing party who seeks relief that goes beyond the denial of the motion shall comply as well with Local Civil Rule 7.1(a)(1) above.

Local Civil Rule 7.1. In filing a single attorney "Affirmation in Opposition" which attempts to combine the factual bases for Plaintiff's opposition to Defendant's motion with his legal arguments, Plaintiff's counsel has failed to comply with Local Rule 7.1(a)(2).[1]

The failure of Plaintiff's counsel to comply with the EDNY Local Rules, and particularly Rule 56.1, is regrettable considering "the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, and 'to assist the court in determining which facts are genuinely undisputed.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 07 CIV. 3378, 2007 WL 4233008, at *1 (S.D.N.Y. Nov. 30, 2007) (quoting *Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 05 Civ. 4584, 2006 WL 1650689, at *2 (S.D.N.Y. June 15, 2006)). As outlined above, Local Civil Rule 56.1(c) is clear that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party*." (emphasis added). There is no ambiguity in this provision. Consequently, the Court accepts as true the undisputed material facts as stated in Defendant's

---

[1]  The Court points out that the "Affirmation in Opposition" filed by Plaintiff's counsel consists of consecutive summaries of the deposition testimony of the Plaintiff and Costco employee Alice Anglin, followed by legal arguments.

Rule 56.1(a) Statement of Undisputed Facts, so long as those facts are properly supported by the underlying record.[2]  However, the Court has also conducted its own independent review of the record.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court may "opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [ ] a statement [of fact].") (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000)).  In addition to the undisputed facts asserted by Defendant, the Court recites any additional facts in the underlying record which are material and undisputed. Whether reciting the undisputed facts as stated by Defendant or those culled from its own independent review of the record, the Court construes the facts in the light most favorable to the Plaintiff as the non-moving party.  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001); *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006).

Finally, the Court points out that Plaintiff's Affirmation in Opposition includes an improper exhibit.  Exhibit 2 attached to the Affirmation purports to be an expert report dated December 28, 2018 from "Jerry Birnbach F.I.S.P. A.I.A. Assoc."  Pl.'s Opp'n. ¶ 29.  On January 11, 2019, Plaintiff requested leave to "utilize and exchange a liability expert report in their opposition papers in accordance with Rule 26 of the Federal Rules of Civil Procedure." DE 24.  On January 14, 2019, Judge Feuerstein denied Plaintiff's application, stating as follows: "Plaintiff's application, filed more than two (2) months after defendant served its motion for summary judgment on the issue of liability, and after the close of discovery on the issue of

---

[2]  When reciting Defendant's facts, the Court sometimes refers directly to the record where necessary for clarity and where otherwise appropriate.

liability, is denied." January 14, 2019 Electronic Order (1).  In a second Order issued the same day, Judge Feuerstein went on to state that "[t]he Court will not consider plaintiff's untimely and improper expert report, or any arguments based thereupon, in its determination of defendant's motion for summary judgment on the issue of liability." January 14, 2019 Electronic Order (2). Consistent with these rulings, this Court declines to consider Plaintiff's expert report as part of the underlying summary judgment record.  Further, the Court will not consider any arguments asserted by Plaintiff based on the expert report.

### B.    The Undisputed Material Facts

At around 5:36 p.m. on October 6, 2017, Plaintiff was involved in an accident in the frozen food aisle of the Costco store located in Lawrence, New York.  Def.'s SOMF ¶ 1.  As of that date, Plaintiff had been a member of Costco for several years and had shopped at the store about once a week during that period of time.  *Id*. ¶ 2.  During the two months prior to the accident, Plaintiff had visited the Lawrence Costco a "[c]ouple of times."  *Id*. (quoting Plaintiff's Deposition ("Pl.'s Dep."), attached as Exhibit E to the Declaration of Sal Deluca, Esq. ("Deluca Decl.") [DE 26-1] at 20: 6).  On October 6, 2017, Plaintiff was in the Lawrence Costco store ten to fifteen minutes before the accident occurred and was in the frozen food aisle approximately two to three minutes before the accident occurred.  Def.'s SOMF ¶ 3.

As of October 6, 2017, large metal racks used to display flowers were placed down the middle of the frozen food aisle.  Def.'s SOMF ¶ 5.  These racks were configured so as to split the 25-foot width of the aisle into two separate paths.  *Id*.  The racks were located close to the middle of the approximately 150-foot long aisle.  *Id*. ¶ 6.  The racks were taller than the Plaintiff, who is 5' 8" tall.  *Id*.; *see* Pl.'s Dep. at 28: 15-19.  While in the frozen food aisle – and standing approximately halfway down its length – Plaintiff "wanted to go to the other side" of the aisle.

Pl.'s Dep. at 28: 2-3; Def.'s SOMF ¶ 7.  At a point along the racks, there was a separation and it was Plaintiff's intention to walk between the racks to get to the other side of the aisle.  Def.'s SOMF ¶ 8; Pl.'s Dep. at 30: 5-12, 17-20.  While starting to walk between the racks, Plaintiff tripped and fell.  Def.'s SOMF ¶ 10; Pl.'s Dep. at 32: 2-4, 15-18.  From the time Plaintiff began walking towards and between the racks until the time he fell, Plaintiff did not look at the ground in front of where he was walking.  Def.'s SOMF ¶ 9; Pl.'s Dep. at 30: 21-25.  Plaintiff fell forward, and only after his fall did he notice what had caused him to trip:  a bar[3] connecting the racks that ran along the direction of the length of the aisle.  Def.'s SOMF ¶ 11; Pl.'s Dep. at 34: 8-11, 37: 4-12.  The bar was gray and approximately ten inches off of the ground, connecting a narrow space between the racks.  Def.'s SOMF ¶¶ 12, 22.  According to Plaintiff, at the time of the accident, the frozen food aisle was well lit and there were "very few" other people in the aisle.  Pl.'s Dep. at 22: 11-13, 23: 11-17.

A photograph taken by Plaintiff's girlfriend after the accident accurately depicts the racks and the bar as they existed at the time of Plaintiff's fall.  Def.'s SOMF ¶ 13; Pl.'s Dep. at 46: 12-25, 47: 2-17.  The photograph depicts the two racks on wheels connected by the bar which Plaintiff allegedly tripped over.  Def.'s SOMF ¶ 13; *see* Photograph attached as Exhibit F to the Deluca Decl.  The photograph depicts the racks nearly empty.  Def.'s SOMF ¶ 13.  The bar connecting the racks is visible, and the photograph also shows the narrow space between the racks.  *Id*.

As a result of the fall, Plaintiff's hands made contact with the ground.  Pl.'s Dep. at 35: 24-25, 36: 2-5.  Plaintiff experienced "an abrasion . . . a scratch" on the front of the ankle where

---

[3]   At different times in the parties' moving and opposition papers, this "bar" is sometimes referred to as a "safety clip."

contact was made with the bar. *Id*. at 39: 6-7. He got up from the floor and found a place to sit down at the entrance of the aisle. *Id*. at 54: 15-23, 55: 17-18. After sitting for about ten minutes, Plaintiff walked over to the office at the front of the building and told a Costco employee he had had an accident. *Id*. at 56: 21-23, 58: 12-19. The Costco employee filled out an accident report in front of Plaintiff, which Plaintiff reviewed and signed. *Id*. at 60: 7-13. At the time his deposition was taken in this matter on July 12, 2018, Plaintiff was not aware of any prior complaints made by anyone concerning the configuration of the racks in the frozen food aisle. Def.'s SOMF ¶ 14; Pl.'s Dep. at 67: 12-15.

Costco Admin Manager Mario Wingate ("Wingate") has been employed by Costco for twenty-two years and oversees the running of operations at the Lawrence Costco. Def.'s SOMF ¶¶ 15-16. As part of his duties, Wingate oversees monthly safety meetings with staff, fills out incident reports, and performs daily safety walk-arounds. *See* Mario Wingate Deposition ("Wingate Dep."), attached as Exhibit G to the Deluca Decl., at 9: 3, 12: 21-24; Def.'s SOMF ¶ 17. Wingate was the Costco employee with whom Plaintiff spoke on October 6, 2017. Wingate Dep. at 13: 12-24. Wingate filled out the accident report in connection with Plaintiff's trip and fall. *Id*. According to Wingate, it is not uncommon for the Lawrence Costco store to place racks like those allegedly involved in Plaintiff's trip and fall down the center of store aisles when there is a need for space. *Id*. at 20: 10-22; Def.'s SOMF ¶ 18.

Costco "Merch" Manager Alice Anglin ("Anglin") has been employed at the Lawrence Costco store for nearly twenty years. Def.'s SOMF ¶ 19. As part of her duties, Anglin directs Costco employees as to the placement of the flower racks in the store. *Id*. ¶ 20; *see* Alice Anglin Deposition ("Anglin Dep."), attached as Exhibit H to the Deluca Decl., at 19: 20-24. At the time of her deposition in this matter, Anglin was not aware of any incidents before or after October 6,

2017 with respect to the flower racks, nor was she aware of any complaints made with respect to the racks. Def.'s SOMF ¶¶ 23-24; Anglin Dep. at 31: 6-25. According to Anglin, the metal bar connecting the racks is used to transport multiple racks within the store, and when the racks are not being transported, the bar is typically placed in the "up" position to minimize the space between racks. *See* Anglin Dep. at 39: 7-22, 49: 9-15. When the bar is in the "down position," the gap between the racks "is not enough space to walk through," and "[is] not a walk-through." Anglin Dep. at 47: 13, 48: 7.

On October 6, 2017, the date of the underlying incident, Costco Member Services employee Joseph Saldotti ("Saldotti") conducted Costco's floor walks, inspecting each aisle, including the frozen food aisle, for tripping and slipping hazards. Def.'s SOMF ¶ 25. He performed these walks that day at 10 a.m., 11 a.m., 12 p.m., 1 p.m., 3 p.m., 4 p.m., and 5 p.m., and, after each walk, he completed Costco's Daily Floor-walk/Safety Inspection report. *Id.* ¶ 26. In his supporting affidavit, Saldotti states that "[i]f a tripping or slipping hazard is observed, it would immediately be remedied, or guarded until remedied." Affidavit of Joseph Saldotti ("Saldotti Aff."), attached as Exhibit I to the Deluca Decl., ¶ 4. On October 6, 2017, Saldotti's 4 p.m. walk was completed at 4:30 p.m. and he started the 5 p.m. walk at 5:15 p.m. *Id.* ¶ 6; Def.'s SOMF ¶ 28. While on the 4 p.m. and 5 p.m. walks, Saldotti did not observe any slipping or tripping hazards, or any dangerous condition with the flower racks in the frozen food aisle, nor did he observe any of the bars between the racks in the "down" position. Saldotti Aff. ¶ 7; Def.'s SOMF ¶ 29.

## C.    Relevant Procedural History

Plaintiff's Complaint was filed in New York State Supreme Court, Suffolk County, on or about February 26, 2018. *See* DE 1-1. On April 9, 2018, Defendant filed a notice of removal to

have the case removed to federal court. *See* DE 1. The parties saw Judge Feuerstein for an

Initial Conference on May 14, 2018, and again for status conferences on July 18 and

September 18, 2018. *See* DE 13, 16. Following motion practice relating to Plaintiff's ability to

engage in expert discovery, which Judge Feuerstein denied, *see* DE 22-25, Defendant's fully

briefed motion for summary judgment was filed on January 24, 2019.[4] *See* DE 26-29. On

January 28, 2019, Judge Feuerstein referred Defendant's motion for summary judgment to this

Court for a Report and Recommendation as to whether the motion should be granted. *See*

January 28, 2019 Electronic Order.

## III.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving

party bears the initial burden of establishing the absence of any genuine issue of material fact.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole*

*Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521

F.3d 130, 137 (2d Cir. 2008). To determine whether the moving party has satisfied this burden,

the Court is required to view the evidence and all factual inferences arising from the evidence in

the light most favorable to the non-moving party. *See Doro*, 498 F.3d at 155; *Woodman v.*

---

[4]    It appears there is some dispute as to whether Plaintiff's opposition was timely served.
Defendant states, and the docket confirms, that on December 5, 2018, Plaintiff requested and
subsequently received an extension of time to serve his opposition. The new service deadline
was set at January 4, 2019. *See* December 6, 2018 Electronic Order. Defendant states that there
is a discrepancy between what the "Certificate of Service" of Plaintiff's counsel states as the
service date and what the FedEx tracking notes indicate as the date they received the papers. *See*
Def.'s Reply at 8-10. This issue was apparently raised before Judge Feuerstein in motion
practice prior to the fully briefed summary judgment motion having been filed. *See* DE 22-24.

*WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).  In dispatching this task, a court need only consider admissible evidence.  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)); *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 251 (E.D.N.Y. 2014).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09 Civ. 5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."  *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor.").  Summary judgment is mandated if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Dobbs v. Dobbs*, No. 06 Civ. 6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

This case invokes the Court's diversity jurisdiction, and, as such, the Court must point out a distinction between the summary judgment standard under the Federal Rules of Civil

Procedure and the applicable standard under the law of New York State.  Under the Federal

Rules, "[i]n moving for summary judgment against a party who will bear the ultimate burden of

proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to

support an essential element of the nonmoving party's claim." *Doona v. OneSource Holdings,*

*Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (quoting *Goenaga v. March of Dimes Birth*

*Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995)); *see Celotex,* 477 U.S. at 325 (determining that

the movant's summary judgment burden may be "discharged by 'showing'—that is, by pointing

out to the district court—that there is an absence of evidence to support the nonmoving party's

case").  Under the law of New York State, by contrast, a defendant in a personal injury action

may not satisfy its summary judgment burden "merely by pointing to gaps in the plaintiff's case,"

*Davranov v. 470 Realty Assocs., LLC*, 79 A.D. 3d 697, 697-98, 911 N.Y.S.2d 912 (2d Dep't

2010), but rather must submit affirmative evidence in support of its position.  *See Totten v.*

*Cumberland Farms, Inc.*, 57 A.D.3d 653, 654, 871 N.Y.S.2d 179, 180 (2d Dep't. 2008) ("No

evidence was elicited as to when the parking lot was last inspected and no information was

provided as to the defendant's general policy on inspecting and maintaining the parking lot.

Accordingly, the defendant failed to meet its initial burden as the movant.").

A "federal court with diversity jurisdiction over a case must apply the substantive law of

the state in which it sits under the *Erie* doctrine."  *Shimunov v. Home Depot U.S.A, Inc.*, No. 11-

CV-5136, 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014) (citing *Allianz Ins. Co. v. Lerner,*

416 F.3d 109, 118 (2d Cir. 2005)).  However, "the Second Circuit has affirmed that 'the

evidentiary burdens that the respective parties will bear at trial guide district courts in their

determination of summary judgment motions,' and are governed by Federal Rule of Civil

Procedure 56 rather than state procedural law."  *Shimunov*, 2014 WL 1311561, at *3 (quoting

*Tenay v. Culinary Teachers Ass'n of Hyde Park,* 281 Fed. App'x 11, 13 (2d Cir. 2008) (summary order)); *see Goenaga*, 51 F.3d at 18; *Ross v. New Canaan Envtl. Comm'n*, 532 Fed. App'x 12, 12-13 (2d Cir. 2013) (summary order).  The Court therefore applies the federal standard, and Defendant's summary judgment burden is satisfied if it can point to "an absence of evidence to support an essential element" of Plaintiff's negligence claim.  *Doona*, 680 F. Supp. 2d at 399.

## IV.  DISCUSSION

As mentioned above, because this case proceeds under the Court's diversity jurisdiction, the Court applies the substantive law of New York while analyzing Plaintiff's claim for negligence.

### A.    Negligence Under New York Law

To establish a *prima facie* claim of negligence under New York law, "a plaintiff must demonstrate (i) the existence of a duty of care owed by the defendant to the plaintiff; (ii) breach of that duty; [and] (iii) damages or injury proximately caused by the defendant's breach." *Gonzalez v. Aramark Food & Support Servs. Grp. Inc.*, No. 09-CV-4843, 2012 WL 1019982, at *3 (E.D.N.Y. Mar. 26, 2012) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998)).  "In addition, to show that the defendant breached its duty of care and 'make out a prima facie case of negligence in a slip and fall case, the plaintiff must prove either that [the] defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act.'"  *Shimunov*, 2014 WL 1311561, at *4 (quoting *Riley v. Battery Place Car Park,* 210 Fed. App'x 76, 77 (2d Cir. 2006) (summary order)); *Drago v. DeLuccio*, 79 A.D.3d 966, 913 N.Y.S.2d 747 (2d Dep't. 2010) ("To impose liability upon the defendants for the plaintiff's fall, there must be evidence tending to show the existence of a dangerous or defective condition and that the defendants either created the

condition or had actual or constructive notice of it and failed to remedy it within a reasonable time.").

### B. Defendant's Arguments

Defendant moves for summary judgment on the grounds that:  (1) Plaintiff has failed to establish that his fall was caused by the existence of a dangerous or defective condition; (2) the alleged condition that caused Plaintiff's accident was open and obvious; (3) there is no evidence in the record that Costco either created or had actual or constructive notice of the condition that allegedly caused Plaintiff's accident; and (4) Plaintiff's fall was the result of his own carelessness.  *See generally* Def.'s Mem.  Applying relevant principles of New York law, the Court turns to an analysis of these arguments.

### 1. Dangerous and Defective / Open and Obvious Condition: Legal Principles

Under New York law, "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Tagle v. Jakob,* 763 N.E.2d 107, 108-09 (2001).  "However, 'a landowner has no duty to warn of an open and obvious danger.' *Tagle,* 763 N.E.2d at 109-10. 'For a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses.'" *Niles v. 1109-1113 Manhattan Ave. Partners, LLC*, No. 13-CV-5427, 2015 WL 6674833, at *2 (E.D.N.Y. Oct. 30, 2015) (quoting *Garrido v. City of New York*, 779 N.Y.S.2d 208, 209 (1st Dep't 2004)).  However, as Judge Garaufis recently pointed out,

> [t]he Second Circuit and New York courts have recognized that the fact that an allegedly hazardous, defective, or dangerous condition may be open and obvious does not in and of itself bar liability. Even if a court were to find that "the claimed hazard . . . was open and obvious as a matter of law, [the defendant] would still [not be] entitled to] summary judgment [where the] plaintiff is not claiming

14

> a violation of the duty to warn, but a violation of the broader duty to
> maintain the premises in a reasonabl[y] safe condition ."

*Niles*, 2015 WL 6674833, at *3 (quoting *Westbrook v. WR Activities–Cabrera Mkts.,* 773

N.Y.S.2d 38, 42 (1st Dep't 2004)).  In such a situation, "[t]he open and obvious nature of a

condition is only part of the inquiry," *Niles*, 2015 WL 6674833, at *4, and summary judgment is

appropriate only where "a condition was both open and obvious *and* not inherently dangerous."

*Id.* (emphasis added) (citing *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003)).

"While the issue of whether a hazard is latent or open and obvious is generally fact-

specific and thus usually a jury question, a court may determine that a risk was open and obvious

as a matter of law when the established facts compel that conclusion, and may do so on the basis

of clear and undisputed evidence."  *Tagle*, N.Y.2d at 169 (internal citations omitted).  Similarly,

"[a]lthough the ['inherently dangerous'] inquiry is generally a question of fact for the jury, a

court may conclude that no issue of fact has been presented after examining the 'width, depth,

elevation, irregularity and appearance of the defect along with the "time, place and

circumstance'" of the injury.'"  *Niles*, 2015 WL 6674833, at *4 (quoting *Trincere v. Cty. of

Suffolk*, 688 N.E.2d 489, 490 (1997)).

### 2.    *Factually Analogous Cases*

Defendant points to several New York cases which it argues are analogous to the facts of

this case and which demonstrate that, based on the undisputed record evidence, the bar

connecting the flower racks over which Plaintiff allegedly tripped was open and obvious and not

inherently dangerous as a matter of law.

In *Gerner v. Shop Rite of Uniondale, Inc.*, 148 A.D.3d 1122 (2d Dep't 2017), the

Appellate Division, Second Department reversed the trial court's order denying the defendant's

motion for summary judgment on the undisputed facts.  The Appellate Division described the undisputed facts as follows:

> The plaintiff was leaving the indoor café area of the defendants' supermarket when she allegedly tripped over the base, or foot, of a decorative fence. A planter had been placed between two of these fences to form part of a barrier separating the café area from the main aisle of the store. Instead of using a wider available path to exit the café area, the plaintiff attempted to reach the main aisle by walking in a narrow space between the decorative fence and the planter. Although the plaintiff had seen the fence before, and she was facing the fence as she walked sideways between the fence and the planter, she did not notice the foot of the fence before she tripped on it.

*Id.* at 1122.  The court held that "the defendants established, prima facie, that the fence, including the 'leg' or foot of the fence, was open and obvious, as it was readily observable by those employing the reasonable use of their senses and, as a matter of law, was not inherently dangerous."  *Id.* at 1123 (citing *Lew v Manhasset Pub. Lib.*, 123 A.D.3d  1096, 1096 (2d Dep't 2014); *Kaufmann v Lerner N.Y., Inc.*, 41 A.D.3d 660, 661 (2d Dep't 2007); *Sclafani v. Washington Mut.*, 36 A.D.3d 682, 683 (2d Dep't 2007); *Casamassa v Waldbaum's Inc.*, 276 A.D.2d 659, 660 (2d Dep't 2000); *Connor v Taylor Rental Ctr.*, 278 A.D.2d 270, 270 (2d Dep't 2000)).  The court in *Gerner* further found that the plaintiff failed to raise a triable issue of fact as to whether (1) "the foot of the fence constituted a 'trap for the unwary' because it was somehow obscured," or (2) "the foot of the fence was dangerously encroaching into the main aisle or other commonly used walkway."  *Gerner*, 148 A.D.3d at 1123 (citations omitted).

In *Schwartz v. Kings Third Ave. Pharmacy, Inc.*, 116 A.D.3d 474 (1st Dep't 2014), the Appellate Division, First Department affirmed the trial court's order granting summary judgment for the defendant.  The court described the undisputed facts as follows:

> [P]laintiff was injured when she allegedly tripped and fell over a display rack in the aisle of defendant's store. Defendant

16

demonstrated that the display rack was an open and obvious condition and was not inherently dangerous. Defendant referred to plaintiff's testimony that she saw the display rack before the accident and submitted photographs of the rack showing its open and obvious nature, and that it was placed in a reasonably safe location. The photographs also show that the base did not protrude into the aisle, was essentially flush with the shelves above, and that the rack was placed flat against the shelving in the aisle, which was clear and uncluttered.

*Id.* 474-75 (internal citations omitted). The court in *Schwartz* determined that the

plaintiff failed to raise a triable issue of fact. Contrary to her argument that the display rack was placed at the end of the aisle such that she did not have sufficient time to perceive it upon turning into the aisle, the evidence, including her testimony, shows that the rack was located at least several feet into the aisle. Moreover, plaintiff stated that she noticed the rack before the accident, and her expert's affidavit fails to raise a triable issue, and was conclusory and speculative.

*Id.* at 475 (internal citations omitted).

Defendant next points to *Chiranky v. Marshalls, Inc.*, 273 A.D.2d 266 (2d Dep't 2000), a case in which the Appellate Division, Second Department affirmed a trial court's order granting a defendant's motion for summary judgment. The court summarized the undisputed facts and ruled as follows:

The injured plaintiff fell when her foot got caught on the bottom rail of a mobile clothes rack located in an aisle in the defendant's department store. The injured plaintiff testified at her deposition that she did not observe the rack at any point in time before the accident. The rack was not an inherently dangerous condition. Moreover, since the rack was readily observable by the reasonable use of one's senses, the defendant had no duty to warn the injured plaintiff of the condition. Since the plaintiffs failed to raise a triable issue of fact in opposition to the defendant's prima facie showing of entitlement to judgment as a matter of law, the Supreme Court correctly granted summary judgment to the defendant.

*Id.* at 266 (internal citations omitted).

Finally, Defendant cites *Reuscher v. Pergament Home Centers, Inc.*, 247 A.D.2d 603 (2d

Dep't 1998), where the Appellate Division, Second Department reversed a trial court's order

denying the defendant's motion for summary judgment. The court summarized the facts and

ruled as follows:

> The infant plaintiff was injured when she tripped and fell over the
> leg of a mobile display standing in an aisle of the defendant's store.
> Viewing the evidence in the light most favorable to the plaintiffs[,]
> we find that the presence of the display in the aisle did not constitute
> an inherently dangerous condition. Furthermore, since the display
> and its legs were readily observable by a reasonable use of one's
> senses, the defendant had no duty to warn the infant plaintiff of this
> condition

*Id*. at 603 (internal citations omitted). With the holdings of these cases in mind, the Court turns to

the instant case.

### 3. *Application to the Undisputed Facts*

In applying the foregoing legal principles, the Court concludes that even if the "bar"

connecting the flower racks was in the "down" position as Plaintiff contends, such circumstances

(1) presented Plaintiff with an open and obvious condition, which (2) was not inherently

dangerous as a mater of law.

### a. **Open and Obvious**

First, as to the "open and obvious" inquiry, to the extent the Court accepts that the bar

connecting the flower racks was in the "down" position, there is no dispute as to the

circumstances which Plaintiff states caused him to trip and fall – the Costco store had metal

racks displaying flowers running down the middle of the frozen food aisle. Def.'s SOMF ¶ 5.

The racks were configured so as to split the 25-foot width of the aisle into two separate paths.

*Id*. The racks were located close to the middle of the approximately 150-foot long aisle and were

taller than the Plaintiff, who is 5' 8" tall. *Id*. ¶ 6; *see* Pl.'s Dep. at 28: 15-19. At some point

along the line of racks, there was a narrow separation and it was Plaintiff's intention to walk

between the racks to get to the other side of the aisle.  Def.'s SOMF ¶ 8; Pl.'s Dep. at 30: 5-12,

17-20.  Plaintiff did not look at the ground in front of where he was walking.  Def.'s SOMF ¶ 9;

Pl.'s Dep. at 30: 21-25.  Plaintiff fell forward, tripping on the bar connecting the racks which ran

along the direction of the length of the aisle.  Def.'s SOMF ¶ 11; Pl.'s Dep. at 34: 8-11, 37: 4-12.

The bar was approximately ten inches off of the ground.  Def.'s SOMF ¶ 12.  When the bar is in

the  "down" position, there is a narrow space between the racks.  *Id*. ¶ 22.  In this scenario, the

gap between the racks "is not enough space to walk through," and "[is] not a walk-through."

Anglin Dep. at 47: 13, 48: 7.  According to Plaintiff, at the time of the accident, the frozen food

aisle was well lit and there were "very few" other people in the aisle.  Pl.'s Dep. at 22: 11-13, 23:

11-17.  Moreover, as previously discussed, the photograph taken by Plaintiff's girlfriend after the

accident accurately depicts the racks and the bar as they existed at the time of Plaintiff's fall.

Def.'s SOMF ¶ 13; Pl.'s Dep. at 46:  12-25, 47: 2-17.  The photograph depicts the two racks on

wheels connected by the bar which Plaintiff allegedly tripped over.  Def.'s SOMF ¶ 13; *see*

Photograph attached as Exhibit F to the Deluca Decl.  The photograph depicts the racks nearly

empty.  Def.'s SOMF ¶ 13.  The bar connecting the racks is visible, and the photograph also

shows the narrow space between the racks.  *Id*.

"For a condition to be open and obvious as a matter of law, it must be one that could not

be overlooked by any observer reasonably using his or her ordinary senses."  *Niles*, 2015 WL

6674833, at *2 (quoting *Garrido*, 779 N.Y.S.2d at 209).  Based on the undisputed facts, the

Court finds that Defendant has established *prima facie* that the condition which allegedly caused

Plaintiff to trip and fall – a bar ten inches off the ground which contrasted in color with the floor

and which connected the flower racks in a location clearly not intended nor designed for

pedestrian traffic – was "one that could not be overlooked by any observer reasonably using his or her ordinary senses." Key to this conclusion is the bar's location: (1) it was out of any pedestrian pathway, and (2) the manner in which the two wheeled racks were connected made it clear that no person was intended to traverse the narrow opening between them. *See* Photograph attached as Exhibit F to the Deluca Decl.; *see also* Anglin Dep. at 47: 13-21, 48: 7. What's more, there is no evidence that any object or person obstructed Plaintiff's view of the connecting bar. Indeed, Plaintiff testified that the frozen food aisle was well lit and sparsely occupied. Pl.'s Dep. at 22: 11-13, 23: 11-17.

The Court's conclusion that the evidence proffered by Defendant establishes *prima facie* that the bar connecting the flower racks was open and obvious as a matter of law finds support in factually analogous cases. *See Gerner*, 148 A.D.3d at 1122-23 (finding that a decorative fence, including the leg or foot of the fence, over which plaintiff tripped was open and obvious); *Bellamy v. Starrett City, Inc.*, 22 N.Y.S.3d 565, 566 (2d Dep't 2016) ("Here, the evidence submitted by the defendants in support of their motion, including photographs of the driveway, was sufficient to establish, prima facie, that the condition of the driveway, including the location of the canopy support columns, was open and obvious and not inherently dangerous."); *Schwartz*, 116 A.D.3d 474-75 (finding a display rack in the defendant's store to be open and obvious and not inherently dangerous where "photographs of the rack show[ed] its open and obvious nature, and that it was placed in a reasonably safe location. The photographs also show[ed] that the base did not protrude into the aisle, was essentially flush with the shelves above, and that the rack was placed flat against the shelving in the aisle"); *Matthews v. Vlad Restoration Ltd.*, 904 N.Y.S.2d 391, 391 (1st Dep't 2010) ("Plaintiff, on her cell phone while hurrying across a scaffold to catch a bus, tripped on a lower horizontal brace and suffered injury.

20

Defendants met their prima facie burden by showing the scaffold was open and obvious as a matter of law, and not inherently dangerous."); *Bernth v. King Kullen Grocery Co.*, 830 N.Y.S.2d 222, 222 (2d Dep't 2007) (finding empty merchandise cart in the frozen food aisle of the defendant's supermarket which caused plaintiff to trip and fall was open and obvious and not inherently dangerous); *Chiranky*, 273 A.D.2d at 266 ("The injured plaintiff fell when her foot got caught on the bottom rail of a mobile clothes rack located in an aisle in the defendant's department store. The injured plaintiff testified at her deposition that she did not observe the rack at any point in time before the accident. The rack was not an inherently dangerous condition. Moreover, since the rack was readily observable by the reasonable use of one's senses, the defendant had no duty to warn the injured plaintiff of the condition."); *Reuscher*, 247 A.D.2d at 603 ("The infant plaintiff was injured when she tripped and fell over the leg of a mobile display standing in an aisle of the defendant's store. . . . [S]ince the display and its legs were readily observable by a reasonable use of one's senses, the defendant had no duty to warn the infant plaintiff of this condition.").

The Court further finds that Plaintiff has failed to point to any evidence in the record to rebut Defendant's *prima facie* showing that the bar connecting the flower racks was open and obvious.

### b.    Not Inherently Dangerous

For reasons similar to those stated above, the Court finds the record evidence establishes *prima facie* that the circumstances allegedly causing Plaintiff's trip and fall were not inherently dangerous.  In this inquiry, the Court looks to the "width, depth, elevation, irregularity and appearance of the defect along with the 'time, place and circumstance' of the injury.'" *Trincere*, 688 N.E.2d at 490.  With respect to the "width, depth, elevation, irregularity and appearance of

the defect," photographic evidence and deposition testimony establish that the connecting bar was clearly out of the way of any intended pedestrian traffic, and was visually distinct from the floor in its color, elevation, and shape.  In effect, it was clearly what it appeared to be – a bar connecting the base of the wheeled flower racks.  *See* Photograph attached as Exhibit F to the Deluca Decl.  As to the "time, place, and circumstances" of the accident, the aisle was well lit and sparsely occupied.  *See* Pl.'s Dep. at 22: 11-13, 23: 11-17.

From these facts, the Court concludes that the circumstances created by the bar connecting the flower racks were not inherently dangerous as a matter of law.  *See Langgood v. Carrols, LLC*, 50 N.Y.S.3d 733, 735 (4th Dep't. 2017) (explaining that, as to the dangerousness of the condition, "[t]he test established by the case law in New York is not whether a defect is *capable* of catching a pedestrian's shoe.  Instead, the relevant questions are whether the defect was difficult for a pedestrian to see or to identify as a hazard or difficult to pass over safely on foot in light of the surrounding circumstances.") (emphasis in original) (quoting *Hutchinson v Sheridan Hill House Corp.*, 26 N.Y.3d 66, 80 (2015)).

The Court further finds that Plaintiff has failed to rebut Defendant's *prima facie* showing that the bar connecting the flower racks was not inherently dangerous.

Because (1) Defendant has established *prima facie* its entitlement to summary judgment by demonstrating the absence of any dispute as to whether the bar connecting the flower racks over which Plaintiff tripped was open and obvious *and* not inherently dangerous, and (2) Plaintiff has failed to point to any evidence in the record to rebut this showing, Defendant is entitled to summary judgment as a matter of law.  *See Niles*, 2015 WL 6674833, at *4. Moreover, because the condition over which Plaintiff tripped was both open and obvious and not inherently dangerous, the issue of whether Defendant had actual or constructive notice of an

22

inherently dangerous condition, as well as the issue of Plaintiff's comparative negligence, are moot and need not be further addressed by the Court.

## V.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Feuerstein that Defendant's motion for summary judgment be GRANTED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

SO ORDERED.

Dated: Central Islip, New York
       May 29, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge